Fish, C. J., and Beck, J.,
dissenting. We do not concur in the ruling made in the second division of the opinion of the majority of the court, in reference to the admissibility of the evidence referred to therein. The 10th ground of the amendment to the motion for a new trial is as follows:
"Because the court erred in failing, refusing, 'and declining, upon motion of the defendant made while the witness Conley was on the *285 stand, to rule out, withdraw, and exclude from the jury each and all of the following questions 'and answers of the witness Conley:
‘Q. What did he mean? A. Well, what I taken it to be, the reason he said he wasn’t built like other men, I had seen him in a position I hadn’t seen aaiy other man in that has got children.
£Q. What position? A. I have seen Mr. Frank in the office there about two or three times before Thanksgiving, and a lady was in the office, and she was sitting down in a chair and she had her clothes up to here (up to her waist), and Mr. Frank was down on his knees, and she had her hands on Mr. Frank, and I found -them in that position.
£Q. When you came into the office before Thanksgiving day, now, when the lady was sitting in the chair? A. Yes, sir; he saw me when he came out of the office, he saw me.
£Q. What was said when they saw you? A. When Mr. Frank came out of the office Mr. Frank was hollering “Yes, that is right, that is right,” and he said, “That is all right, it will be easy to fix it that way.”
‘Q. Well, did you ever see him on any other occasion? A. Yes, sir; I have seen him on other times there.
£Q. What other occasions? A. X have seen Mr. Frank in the packing-room there one time with a young lady lying on the table.
£Q. How far was the worn an on the table? A. Well, she was on the edge of the table when I saw her.’
The motion was made while the witness Conley was on the stand, and before any cross-examination had been had upon either of the circumstances referred to in said questions and answers, but after cross-examination upon other subjects had progressed a day and a half. The motion to rule out, withdraw, and exclude was made because, as stated to the court when the motion was made, said questions and answers were immaterial, irrelevant, illegal, prejudicial, and dealing with other matters and things and crimes irrelevant and disconnected with the issue in the case then on trial.”
The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible; but to this rule there are several exceptions. 12 Cye. 407. Of this rule it has been well said: “The *286 rule which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused is applied with considerable strictness in criminal proceedings. The wisdom and justness of this, at least from the defendant’s standpoint, are self-evident. He can with fairness be expected to come into court prepared to meet the accusations contained in the indictment only, and, on this account, all the evidence offered by the prosecution should consist wholly of facts which are within the range and scope of its allegations. The large majority of persons of average intelligence are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences, and conclusions without adequate foundation. From such persons jurors are selected. They will very naturally believe that a person is guilty of the crime with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character. And it can not be said with truth that this tendency is wholly without reason or justification, as every person can bear testimony, from his or her experience, that a man who will commit one crime is very likely subsequently to commit another crime of the same description. To guard against this evil, and at the same time to avoid the delay which would be incident to an indefinite multiplication'of issues, the general rule (to which, however, some very important exceptions may be noted) forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial. To this general rule there are a very few exceptions which have been permitted, from absolute necessity, to aid in the detection and punishment of crime. These exceptions are carefully limited and guarded by the courts, and their number should not be increased.” Underhill, Cr. Ev. § 87.
The substance of this general rule was incorporated in our first Civil Code, as follows: “The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.” Civil Code (1863), § 3680. The same language appears in all of our subsequent codes and is now found in the Civil Code (1910), § 5745. Penal Code (1910)., § 1019. In the code sections the general character of the parties and their conduct in other trans *287 actions, whether such extraneous transactions constitute offenses or not, are declared irrelevant matter, and the general character of the parties and their conduct in other transactions are excluded from evidence for the same reason; and it is only when the nature of the action being tried involves such character and renders necessary or proper the investigation of such conduct that they are admissible. In impliedly declaring that such general character and conduct in other transactions are admissible when the nature of the action, involves such character and renders necessary or proper the investigation of such conduct, the language must be interpreted in the light of the well-established rules of evidence existing at the time of the codification. There has been no material change of the rule of evidence as to the point now under discussion, as it existed prior to the adoption of our first code, unless perhaps in somewhat enlarging or adding to the exceptions. No change, however, has. been made, of which we are aware, that is pertinent to the question now under discussion. The general rule is well settled, and, as to it, there is no difference of opinion between the majority of the court and ourselves. The difference arises upon its application, or, rather, whether the circumstances of the case at bar bring the evidence of the witness Conley, which the court refused to exclude, within any of the recognized exceptions to the general rule.
Because Conley testified that, in a statement made to him by the defendant in connection with the homicide, the defendant said, “Of course you know I aint built like other men,” was it competent for the witness to testify directly and in detail as to specific acts of lasciviousness, constituting what are generally classed as “sexual offenses,” on the part of the defendant with other women, and with' their consent, on 'former occasions, at indefinite times within a period of some two years? We think not. “It is well settled that a witness should not be permitted to give his understanding of words and phrases, and even where he has heard the language he should not be permitted to give his understanding as to the speaker’s meaning.” 5 Ene. Ev. 112. “It is not permissible for a witness who testifies to a conversation between himself and another to state to. whom such other person referred when, in such conversation; he used the pronoun ‘them/ the opinion of the witness on this qhestion not being competent evidence.” McCray v. State, 134 Ga. 416 (68 S. E. 62, 20 Ann. Cas. 101). See also *288 State v. Wright, 41 La. Ann. 605 (6 So. 137), wherein it was held: “It is not competent for a witness to explain the meaning of words used by another person, whose conversation or utterances he has recited before the jury.” Bragg v. Geddes, 93 Ill. 39; Lawrence v. Thompson, 26 App. Div. 308 (49 N. Y. Supp. 839); People v. French, 69 Cal. 169 (10 Pac. 378); State v. Rudd, 97 Iowa, 389 (66 N. W. 748). The same rule has been applied in the matter of dying declarations, to the effect that, “If the witness undertakes to give the exact words of the declaration, it is for the jury to judge of their import, and the witness can not be asked as to what the declarant meant.” 1 Whar. Cr. Ev. § 301; Castillo v. State (Tex. Cr. App.), 69 S. W. 517; Nelms v. State, 13 Smedes & Mar. (Miss.) 500 (53 Am. D. 94). Suppose a defendant on trial for murder, in a conversation with a witness relating to such offense, had stated: “You know I am a bad man.” Would it be competent for the person to whom such a declaration was made1 to testify directly and in detail to every violent and unlawful act in the past life of the defendant, or within several prior years, about which he knew the witness had knowledge, and which, in the opinion of the witness, showed the defendant to1 be a bad man, where there was no logical connection between such acts and the offense for which the defendant was being tried; or where the testimony in reference to such prior conduct of the declarant did not come within any of the exceptions to the general rule which we have stated? To us it clearly appears that such evidence would be incompetent on the ground of irrelevancy. Yet, it is urged that the testimony of the witness Conley, as to lascivious conduct of the defendant- with other women prior to the homicide of Mary Phagan, was admissible to explain what the witness understood to be the meaning of the alleged declaration to him by the defendant, that “You know I aint built like other men,” even though it does not appear that the defendant ever knew that Conley had any knowledge of the defendant’s conduct with the woman on the table. In holding that the fact of the witness Conley having testified that the accused said to him, “You know I aint built like other men,” would not render admissible the evidence which he was permitted, over objection, to give of other and different acts and offenses, we have adduced reasons which seem to us sound, and authorities which strengthen us in that conviction". For substantially the same rea *289 sons and in the light of the same 'authorities, we are of the opinion that such evidence of different acts and offenses committed against or with other parties than the deceased was not admissible for the purpose of allowing the witness to explain to the jury what .the accused meant in saying, "I want you to watch for me like you have been doing the rest of the Saturdays.”
Before noting and discussing the exceptions to the general rule above referred to, we will quote some pertinent remarks in reference to the rule, made by O’Brien, J., in the case of People v. Molineux, 168 N. Y. 264 (62 L. R. A. 193, 61 N. B. 286). He said: "In any inquiry concerning the indentity of the author of a great crime, where the evidence is purely circumstantial, the human mind instinctively adopts processes in arriving at results that are not sanctioned by the rules of evidence. The hardened and habitual criminal is more likely to be suspected than one who had never committed a crime before. If the party suspected committed a similar crime before by the same or similar means, or a series of such crimes, proof of these facts goes far to establish his guilt in the popular mind of the offense charged, and for which he is on trial; and yet nothing is better established than the rule that the vicious character of a person on trial for a specific offense' can hot be shown, unless he himself makes his character or the events of his life a subject of inquiry by becoming a witness in the case. No matter how notorious a. criminal the party on trial may be, neither his general reputation nor other specific offenses can legally be proven against him as evidence of his guilt of the offense. That such proof is persuasive, and has great influence, when introduced, upon courts and juries, can not be doubted; but the law does not permit it to be given upon the trial of an issue concerning the guilt or innocence of the party on trial for a specific offense. The reason is that such proof does not bear upon the issue in the case, and hence it is misleading, since it does not follow that a party who has committed one crime, or many, is guilty of some’ other crime for which he is on trial. It is said that the evidence culminating in Barnet’s death tends to identify the defendant as’the author of the death of Mrs. Adams; but that is only another way of asserting the general proposition that the commission by the defendant of one crime tends to prove that he committed another crime, and, no matter in what form or how often that proposition *290 is asserted, or how persuasive and plausible it may appear, it is erroneous and misleading, since it violates a salutary principle of the law of evidence, which should be applied in all cases without regard to the question of actual guilt or innocence. If the guilty can not be convicted without breaking down the barriers which the law has erected for the protection of every person accused of crime, it is better that they should escape, rather than that the life or liberty of an innocent person should be imperilled. . . It is so difficult for the human mind to discard false theories that assume the disguise of truth, and so easy to substitute suspicions and speculations for evidence of facts, that proof of the general bad character of the accused, or of participation in other crimes, which is practically the same thing, would no doubt be of great aid to the people in procuring a conviction for the specific offense charged in the indictment. Such proof, in a doubtful case, might turn the scale against the accused; but the law, for obvious reasons, does not permit it, and it is dangerous to subvert the rule upon the vague theory that it identifies the accused as the author of the offense charged, which means nothing more than that it proves, or tends to prove, that he is guilty.”
We come now to consider the exceptions to the general rule declaring the inadmissibility of evidence of the conduct of the accused in other transactions, or-of the commission of crimes other than the one for which he is on trial. In the recent work of Wharton on Criminal Evidence (10th ed.), vol. 1, § 31, the exceptions are set forth as follows:
"(1) Eelevancy as part of res gestse.
“ (2) Eelevancy to prove identity of person or of crime.
“(3) Eelevancy to prove scienter, or guilty knowledge.
“ (4) Eelevancy to prove intent.
"(5) Eelevancy to show motive.
"(6) Eelevancy to prove system.
"(7) Eelevancy to prove malice.
<e (8) Eelevancy to rebut special defenses.
"(9) Eelevancy in various particular crimes.”
In the opinion of the majority of the court it is sought to be shown that the evidence of the witness Conley, as to libidinous conduct of Frank with other women on different occasions prior to the killing of Mary Phagan, was admissible because falling within two *291 of the well-recognized exceptions to the general rule which excludes evidence as to other offenses than the one for which the defendant is being tried. It is urged that the evidence of Conley falls within the exception to show motive, 'and also within the exception to prove a scheme, plan, or system. In the prevailing opinion it is said: “We think that the evidence was admissible, both on the subject of motive 'and of plan, scheme, or systemand further, that “the common motive of lechery pervaded not only the homicide, but also the other transactions in regard to which evidence was admitted, and there was a sufficient approximation in point of time and place as to all.” We will endeavor first to show that the evidence was not relevant as tending to show motive, in view of the meaning of the exception as shown by numerous decisions relating to it. Motive is the inducement, cause, or reason why the thing is done. Bouvier’s Law Dictionary; 5 Words & Phrases, 4613. In the majority, opinion it is written: “A theory of the State, which finds a basis in the evidence, was that the murderer desired to have sexual relation of some character, natural or unnatural, with the deceased; that she resisted his attempt for that purpose; that he struck her, not with the intent at first to kill her, but in pursuance of his purpose above mentioned; that the blow produced unconsciousness; and that, in fear of her regaining consciousness and that his criminality would be exposed, he’ choked his victim with a cord. Here the question of whether the accused had a motive in regard to his conduct on that occasion, which might induce him to commit the homicide in the effort to carry out his purpose, was of the utmost materiality.” The correctness of this statement is readily conceded, and all evidence tending to show that the person of the deceased had been violated was admissible to support the theory that she was killed to prevent a discovery of the assault that had been committed upon her. But, in our opinion, evidence of prior lascivious transactions by the defendant with other women with their consent was not relevant, either to show that the defendant assaulted the deceased for the purpose of having some sort of sexual relation with her or to prove that he had a motive for killing her, notwithstanding the defendant may have been engaged in the other libidinous acts at or near the same place where the homicide occurred. To our minds the evidence in the case utterly failed to show any logical *292 connection between such other lecherous acts of the defendant with different women, as disclosed by the testimony of Conley, and the assault made upon the deceased and the killing of her to prevent its disclosure. In Cawthon v. State, 119 Ga. 395 (46 S. E. 897), it was decided: “4. Evidence of the commission of a crime other than the one charged is generally not admissible. 5. To make one criminal act evidence of another, a connection between them must have existed .in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other. 6. If the evidence be so dubious that the ■ judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the'jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt.” In that case Cawthon was indicted and tried for the murder of Tucker, the charge being that his death was brought about by poisoning, the article used being strychnine. “Tucker died on the 21st of July, 1903. The court allowed the State, over objection of counsel for the accused, to prove that, ten days before the death of Tucker, Joel Horne, a neighbor, died on the way home from Tucker’s house, within an hour or less after taking a drink of peach brandy given him at that house, and that the symptoms manifested while dying and the condition of Horne’s body after death indicated that his death resulted from strychnine poisoning. The court also allowed proof by the State chemist that he had found strychnine in a few drops of brandy taken from the bottle from which Horne was alleged to have drunk. There was no evidence that the accused ever handled or saw the brandy at any time before the death of Horne. The only evidence connecting the accused with the bottle of brandy was the testimony of the daughter of Tucker, to the effect that after the death of Horne the accused poured out the brandy left in the bottle from which Horne was shown to have drunk. This evidence was objected to on the ground that it was evidence of an independent crime not connected with the offense for which the accused was being tried,'was irrelevant, and exceedingly prejudicial to the accused.” Justice Cobb, speaking for the court, in delivering the opinion used this language: “When one is on trial charged with the commission of a *293 crime, proof of a distinct and independent offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other; While this rule is general and subject to few exceptions, still there are some exceptions; as when the extraneous crime forms part of the res gestae; or is one of a system of mutually dependent-crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused, or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged.” In support of the ruling made by him and of the recognized exceptions thereto, he cited: Gillett on Ind. & Col. Ev. § 57; Whart. Crim. Ev. (9th ed.) § 30 et seq.; Kerr’s Law of Homicide, § 469; McKelvey on Ev. §§ 156-157; Underhill’s Crim. Ev. (15th ed.) § 53; 1 Crim. Law Mag. 29; Farmer v. State, 100 6a. 41 (28 S. E. 26). An examination of these authorities supports the rule and its exceptions as stated. It was further stated in the opinion: “In order to justify the admission of evidence relating to an independent crime committed by the accused, it is absolutely essential that there should be evidence establishing the fact that the independent crime was committed by the accused, and satisfactorily connecting that crime with the offense for which the accused is indicted. Even if the evidence establishes the commission by the accused of the independent offense, it is inadmissible until it be shown satisfactorily that that crime had some connection with the transaction then under investigation. Let it be conceded for the moment that the evidence offered in the present case was sufficient to show that Horne died from the effects of poison which had been prepared by the accused for the purpose of bringing about the death of Tucker; is there evidence so connecting the death of .Horne with the death of Tucker as that the murder of Horne by the accused in the manner indicated would throw any light upon the question as to whether Tucker came to his death as a result of a poison administered by the accused with murderous intent? If Horne’s death resulted from the drink of brandy given to him by Tucker, then the only connection which the accused was. shown to have had with Horne’s death was that shown by the evidence of *294 Tucker’s daughter, to the effect that she saw the accused pour the brandy from the bottle from which Horne drank. The evidence did not show that Tucker’s death resulted from drinking any of the brandy contained in the bottle just referred to. In the ease of Shaffner v. Commonwealth, 72 Pa. St. 60 [13 Am. R. 649], it is said that in order for one crime to be evidence of another, there must be a connection between them in the mind of the criminal, or it must be necessary to identify the accused as the person who committed both crimes. . . Applying this rule, we do not think the evidence offered for the purpose of connecting the two crimes -alleged to have been committed by the accused was sufficient to authorize evidence of the independent crime.”
It is truej that, there-was a dissent by two of the six Justices presiding in the Qáwthon case, but it does not appear that either of the dissenting Justices did not agree to the correctness of the statement of the general- rule that evidence of the commission of a crime other than the one charged is generally not admissible, and the exceptions there started to such rule. Both of the dissenting Justices were of the opinion that the errors assigned in the bill of exceptions could not be reviewed, because of the manner in which the case was brought to the Supreme Court. In the dissenting opinion of Justice Candler it is clearly intimated that he concurred in the law announced in the majority opinion on the question of evidence;.for-he said: “The jury might well have inferred that the pouring out of the brandy by the accused was done for the purpose of concealing the fact that it had been poisoned; and this, in my opinion, furnished a sufficient link to connect the so-called independent crime with the one of which the accused was charged. On the trial of A for shooting and killing B, evidence that sometime previously to the transaction under investigation A had shot and killed C would not, without more, be admissible; but there could be no objection to showing that in an attempt to kill B, A had §hot at him but missed him and killed C. Of like character, in my opinion, is the evidence in the present case of the death of Horne.” Thus showing that the Justice took no exceptions to the rules of evidence as announced by the majority, but that he merely differed with them on the application of the rules as announced. It is apparent that it might have very cogently been urged in the Cawthon case that the evidence of the first crime was admissible *295 on the ground that there was a logical connection between it and the crime charged in the indictment; and we'have dwelt on this case, not to show a parallel between the- evidence there held to be inadmissible and the evidence under discussion in the case at bar, but to show how strictly the general rule has been observed by this court, and how cautiously and vigilantly the exceptions thereto are guarded and limited.
In the opinion of. the majority of the court in the case at bar, referring to the Cawthon case, it is said: “It will thus be seen that after stating that there were some exceptions to the rule, the use of the words ‘as when/ etc., was illustrative, and did not undertake to lay down a complete category of exceptions. This is further borne out by the use of the expression, ‘malice, intent, motive, or the like/ and of the last statement above quoted.” This,- .in-, otir opinion, is not a fair interpretation of Justice Cobb’s language, as we think it is clear that his purpose was to state the general rule on the subject of the admissibility of evidence of the commission of a crime other than the one charged, and to give a complete enumeration of every exception to the rule (as many ■ authorities are cited to support the general rule and exceptions as he stated them), the last exception referred to by him being to'the-effect that evidence of the commission of a crime other than the one charged is admissible “where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense. (Underscoring ours.) In Sullivan v. State, 121 Ga. 183 (48 S. E. 949), the prosecution was for foeticide. The indictment charged that the crime was committed by the using of pressure and instruments. It was held competent for the State to show that the defendant had previously attempted to procure an abortion on the same woman by similar means and by the use of medicines. In the opinion delivered by Justice Lamar, it was said: ■ “It was therefore competent to offer the bottle with the number and contents of the prescription, and to establish from the physicians what the effect of this medicine in such doses would have been. There was a logical connection between the two attempts to procure an abortion on the same female. Prior unsuccessful attempts to bring about the abortion may be shown. Cawthon v. State, 119 Ga. 409.” It thus appears that the rule announced in the Gawthoñ case, as to the necessity of a connection between the offense for *296 which the defendant is on trial and a former similar offense committed by him, was approved and followed in the Sullivan case, wherein six Justices presided. It should be stated, however, that the evidence referred to in the Sullivan case was held to be admissible also on other grounds. In Shaw v. State, 102 Ga. 660 (29 S. E. 477), cited in the majority opinion, the defendant was on trial for murder caused by the wrecking of a railroad train resulting in the death of a human being other than his wife. It was held, that, as his wife was a passenger on the train wrecked and was there by his direction, it was not error to admit evidence that he had become enamored of another woman and had made her a proposition of marriage, which, prior thereto, had been rejected. This ruling was clearly within the exception allowing evidence of other transactions which tended to prove motive for the commission of the crime for which the defendant was being tried. There was an obvious connection between the conduct of the defendant in the other transaction and the offense charged against him. In Alsobrook v. State, 126 Ga. 100 (54 S. E. 805), also cited in the majority opinion, the third headnote is as follows: “To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor by a connection which shows that he who committed the one must have done the other.” Cawthon’s case was cited 'as authority on this point. It was stated in the opinion, however, as noted by the majority opinion, that “Some of the evidence admitted in the present case, as to prior attempts to obstruct the tracks of the railway, did not connect the accused in any way with such prior attempts. This evidence was inadmissible and highly prejudicial to the accused.” Moreover, only five Justices presided in the case.
In Johnson v. State, 128 Ga. 71 (57 S. E. 84), another case cited in the majority opinion, the defendant was tried for the murder of his father. It was held that it was proper to admit testimony in behalf of the State tending to establish the fact that the defendant knew that the deceased had insurance upon his life and had money in a bank, and, as the defendant denied the act of killing, such evidence was admissible as tending to show motive'on the part of the defendant to commit the homicide.- Proof of' the *297 financial condition of the defendant was, however, held to be inadmissible. The case is not at all in point as to the question whether evidence of the commission of another crime is admissible on the trial for the offense charged; nor does any ruling in the ease indicate the disposition of this court to enlarge the exception as to motive on the point just referred to. The case of Grantham v. State, 95 Ga. 459 (22 S. E. 281), is also cited in the prevailing opinion, where it is said that the ruling in that case “recognized a logical connection between the transactions.” If this be true, then for that very reason it is essentially different from the case at bar. In our opinion, however, the ruling in the Grantham case was not based upon the rule of evidence now the subject of- discussion, but upon the clear right of the defendant to show, if he could, that he obtained the goods otherwise than by committing burglary, and therefore he had as much right to prove, either by direct or circumstantial evidence, that he obtained them by gambling as he would have had to show that he got them -by purchase. Another case cited in the majority opinion is that of Farmer v. State, 100 Ga. 41 (28 S. E. 26). The decision there made falls squarely within the exception generally recognized and stated in Gawthons ease, supra, to the effect that where the offense charged and for which the defendant is being tried involves the necessity of proving the intent with which it was committed (the -intent being an essential element of the offense — such as obtaining goods under false pretenses and by fraud), then the evidence of other offenses of a like nature may be introduced for the purpose of proving such intent. On this subject it .is -said, in 1 Whar. Crim. Ev. § 36: “In many criminal offenses, intent is the essence of the crime, and where not established, the prosecution fails. In crimes malum in se, intent is presumed, but where not a matter of presumption, it must be proven as any other fact. Where intent is material, the acts, declarations, 'and conduct of the accused are relevant to show that intent. Hence, evidence of collateral offenses is admissible, on the trial of the main charge, to prove the intent. To be admissible as relevant, such offenses need not be exactly concurrent, but if committed within such time, or show such relation to the main charge, as to make connection obvious, such offenses are admissible to show intent.” A .greaf. number .of cases are cited in *298 support of the text. The authorities cited in Farmer’s case, supra, are to the same effect.
In the prevailing opinion some broad language of Judge Warner, used in the case of Bulloch v. State, 10 Ga. 47, 55 (54 Am. D. 369), is quoted. The exact ruling on the subject as to the admissibility of evidence,- as shown in the first headnote of the opinion, is nothing like so broad as the language quoted. Moreover, that was a trial on an indictment for embezzlement; and the rule is well recognized that in trials for that offense evidence of other contemporaneous acts of a similar character is competent for the purpose of showing the guilty intent and to repel the inference or defense of accident or mistake. The purpose of using other acts of the sort is to show the criminal knowledge or intent, the theory being that the recurrence of similar takings of property, or, as in the usual cases, similar incorrect entries in account-books, suffices to negative mistake or inadvertence on the occasion charged. The system principle may also be applicable in such cases where it is desired to argue from a system of embezzlements to the very act of taking in issue, and not merely to the intent in taking. As to this there are certain limitations, which, however, need not be here noticed. 1 Wigmore on Evidence, § 329; annotations on the case of People v. Molineux (supra), 62 L. R. A. 264. Werner, J., in the opinion of the court in that case, so clearly indicates the class of cases in which evidence of the commission of a crime other than the one charged is admissible for the purpose of proving motive, that we quote at some length from his opinion. He said: “Although it seems unnecessary to cite authorities in support of the statement that, whenever motive is to be established, it must be the motive which underlies the crime charged, we will briefly refer to a few cases which illustrate the rule. In Pierson v. People, 79 N. Y. 424, 35 Am. Rep. 524, the defendant was charged with the murder of one W. The alleged motive was defendant’s desire to possess the wife of the deceased. On the trial evidence was received to show that, eleven days after the death of W., the defendant and the wife of the deceased appeared before a clergyman in Michigan to' be married. Defendant there took an oath that there was no legal objection to the marriage. Although this evidence tended to prove the commission by the defendant of another crime than- that for which he was on trial, this court said: ‘This evidence tended to *299 prove that the motive which operated upon the prisoner was the desire to possess W.’s wife; that his passion for her was so absorbing that he was determined to overcome all obstacles standing in his way.’ In Stout v. People, 4 Park. Crim. Rep. 132, the crime charged was murder. On the trial evidence was received of an incestuous connection between the defendant and his sister, the wife of the deceased. This was held to be competent, even if it did prove the commission of another crime, for it tended to disclose the motive which prompted the defendant to get rid of the deceased. In Hawes v. State, 88 Ala. 37, 7 So. 302, the defendant was on trial for the murder of one of his children. Two other indictments were then pending against him for the murder of his wife and another child. Evidence was received to support the theory that the motive for the killing of all was to open the way for a second marriage, which was consummated a few days after the last death. This was held proper, because the motive was the same in each ease. In People v. Harris, 136 N. Y. 443, 33 N. E. 65, the defendant was accused of the murder of his wife. The marriage had been secretly performed. Evidence of abortions performed upon his wife by the defendant were held to be admissible to show defendant’s efforts to keep the marriage a secret, and as tending to show a motive for the poisoning of the wife when secrecy was no longer possible or the alliance had become burdensome. So, on the trial of a husband for the murder of his wife, evidence of criminal proceedings against the defendant for failure to support his family, made ten months before the murder, was properly held admissible upon the question of motive. People v. Otto, 4 N. Y. Crim. Rep. 149. In another case the defendant was charged with the murder of his brother’s wife. The brother, his wife, and two children were poisoned with arsenic. The brother and his wife died, but the attempt upon the lives of the children failed. Thereupon the defendant procured himself to be appointed the guardian of his brother’s children, and then commenced to create and utter various false and forged claims against his brother’s estate. The theory of the prosecution was that the defendant coveted his brother’s estate, and, in order to gain possession of it, conceived the plan to murder those who stood in his way; that, failing in the attempt to kill the children, he attempted to accomplish his object by forgery. It was held that evidence was properly received of all the *300 crimes involved in this theory, as it was relevant upon the existence of motive for the commission of the crime charged. People v. Wood, 3 Park. Crim. Rep. 681. Cases of this character might be multiplied indefinitely; but enough have been cited to show that, when evidence of extraneous crimes has been held competent upon the existence of motive, it has been either the specific motive which underlay the particular crime charged, or a motive common to all of the crimes sought to be proved.”
Eeferring again to the statement in the prevailing opinion that “the common motive of lechery pervaded not only the homicide, but 'also the other transactions in regard to which evidence was admitted,' and there was a sufficient approximation in point of time and place as to all,” we will say that we are unable to perceive any such “common motive,” unless the expression, “common motive” as used is to be taken to mean substantially the same 'as “like motive” or “similar motive;” and that it does not have this meaning appears from numerous decisions holding that proof of extraneous crimes, even in eases involving what is commonly called “sexual offenses,” where, as it is said, the exception is sometimes extended, is not 'admissible, unless the offense was between the same parties. Eeferring to the extension, in cases involving “sexual offenses,” of the exception to the rule which inhibits proof of independent acts or crimes, it is sometimes said that “this exception to the general rule has been liberally extended, and for a reason peculiar to those crimes.” We find this principle so stated in certain texts, decisions, and in the valuable and elaborate note to the case of People v. Molineux (supra) in 62 L. E. A. 193. Cases too numerous to summarize here, or even to cite, are there referred to. But in every case where the evidence of different offenses of this character was held admissible, it was between the same parties, save in three or four particular instances, where the evidence of the offense was. admitted under the peculiar facts of that case; and to these rare exceptions we will hereafter make reference. In the case of State v. O’Donnell, 36 Or. 222 (61 Pac. 892), after recognizing that the general rule, that evidence of other crimes than that charged in the indictment is not admissible, is subject to a few well-defined and carefully guarded exceptions, Mr. Justice Moore, speaking for the court, as illustrating the exception, said: “(5) When a prisoner is charged with ary.form of illicit sexual *301 intercourse, evidence of the commission of similar crimes by the same parties is admissible to- prove' an inclination to commit the act for which the accused is put upon his trial.” But in a decision by the same court subsequently rendered, Mr. Justice Burnett of that court, referring to the exception stated by Mr. Justice Moore, said: “This exception limits illicit commerce among sexes to that between the same parties, and no authority has been cited where this rule is enlarged.so as to admit testimony about acts of sexual intercourse with other parties than the one named in the indictment.” State v. Start (Or.), 132 Pac. 512, 46 L. R. A. (N. S.) 266. If the expression we have quoted above, “common motive,” could be held to mean the same or substantially the same as “similar motive” or “like motive,” then evidence of acts of illicit intercourse between one accused of a sexual offense and different parties would be admissible; and yet, with the rare exceptions to which we have alluded above and to which we shall again refer, testimony of independent offenses is not admissible, unless the intercourse was between the same parties; and this must be upon the ground that where an offense charged against the party on trial involves sexual connection between him and a particular woman, there is no logical connection between the case proposed to be proved and similar acts between the accused and a different party. As was said in State v. Lapage, 57 N. H. 245 (24 Am. R. 69), “However extreme the case may be, I think it will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed, to be proved, other than, the tendency to commit one crime as manifested by the tendency to commit -the other.” .
Even close proximity in point of time has not been regarded as a sufficient basis of exception to the rule inhibiting proof of other acts not between the same parties. In the case of McAllister v. State, 112 Wis. 496 (88 N. W. 212), where the accused was charged with the offense of assault with intent to commit rape upon a named woman, it was held error to admit evidence of an attempt by the accused to commit a similar crime op another person, although the similar crime had been committed within about an hour before the crime charged in the .indictment, and both assaults were made within a short distance from each other; and it was said by Wins-low, J., in discussing the ruling of the trial court held to be erro *302 neons: "It is freely admitted by the State as a general rule that upon a prosecution for one offense evidence of the commission of another and separate offense is not admissible, but the claim is made that the evidence was admissible in this case for the purpose of proving intent.' The rule that where intent must be proven, other crimes of like nature, which are so intimately related to the act in question as to show a common purpose or a continuity of purpose in all, may be shown upon the question of motive or intent, or to repel the inference of accident, is well recognized. State v. Miller, 47 Wis. 530, 3 N. W. 31; Jones, Ev. §§ 143, 144; Zoldoske v. State, 82 Wis. 580, 52 N. W. 778. The rule is one which is not always easy to apply, and it is manifestly one which needs to be most carefully applied and guarded, or it is likely to result in many convictions based largely upon proof of the commission of crime not charged in the information, — a result which our criminal law does not contemplate. In the case of Proper v. State, 85 Wis. 615, 55 N. W. 1035, which was a prosecution for rape upon a girl, proof that the accused had previously got into bed with the prosecutrix and another girl named Emma, and had sexual intercourse with the other girl, was held proper on the sole ground that such an act was an indecent assault upon both girls; but it was said in the opinion by the late Mr. Justice Pinney: ‘We do not suppose that evidence that the defendant had committed adultery or been guilty of acts of improper familiarity with the girl Emma at another .time and place would be competent evidence on the trial of the present issue.’ While this remark was obiter in that case, it is believed that it expresses the.rule which has been generally approved by the authorities, namely, that in prosecutions for crimes of this nature evidence of previous attempts by the accused to commit the crime upon the same person is admissible on the question of intent, but that evidence of attempts to commit the crime upon other persons is not admissible.”
In cases constituting the rare exceptions to the rule inhibiting, in the trial of one. charged with a crime which might be classed as a "sexual offense,” the proof of other distinct crimes of the same class but between the accused and a different person from the one with whom or upon whom he is charged to have committed the offense alleged in the indictment, which cases we have referred to above, it will be found that the different offense which the State *303 was permitted to prove was one where the two offenses, though separate and distinct from each other, were parts of a single transaction, as in the case of State v. Desmond, 109 Iowa, 72 (80 N. W. 214), cited in the opinion of the majority; or that the offense which it was held permissible to prove in support of the charge in the indictment constituted a part of the res gestae, as in the case of Parkinson v. People, 24 N. E. 772. In the case of Proper v. State, 85 Wis. 615 (55 N. W. 1035), which is cited in the prevailing' opinion, and where it was held that "evidence that while the prosecuting witness was sleeping with another girl in the defendant’s house the defendant got into the bed and had sexual intercourse with the other girl” was admissible, the ruling is based, as appears from a discussion of that ground, upon the opinion entertained by the court rendering the opinion that the fact that the accused got into the bed with the girl upon whom he was charged in the indictment with making an assault, and the other girl, was an indecent assault of a very gross character upon both girls. Clearly this would bring it within that class of cases where proof of other offenses between the same parties is .admissible.
In the ease of State v. Start, supra, decided by the Supreme Court of Oregon, it appears that the accused was charged with the offense of sodomy, or the crime against nature. The trial court admitted testimony to show that the defendant had sustained similar criminal relations with other parties. The Supreme Court of Oregon reversed the judgment, holding that the admission of such testimony was error. One member of the court dissented, and, after stating that the admission of the testimony referred to over objection constituted the most serious question raised in the record, argued that the case fell within the exception to the general rule, and that "Where a crime is an unusual one, committed by unusual means, indicating a peculiar habit or system, evidence of other like offenses committed in the same manner may be admitted,” and, arguendo, said: "The crime is unusual and unnatural, as its name indicates. Indeed it was committed in the present instance in so unusual a manner that a strong and plausible argument has been advanced that the facts proven do not constitute the crime charged, and it is evident that we are dealing with an offense not usually committed, and rarely committed in the manner described in the testimony. This narrows the field of investigation to the inquiry, *304 ‘Who in the community would be likely to commit so unusual a crime in so unusual a manner ?’ The response naturally is, ‘Show us a person in the community who has in other instances perpetrated the offense in the same manner, and we will show you the man most likely to have perpetrated this particular offense/ Murder, ' rape, and larceny are common. They are not infrequently associated with normal minds, but this offense is uncommon and abnormal.” And, in pursuit of this line of argument, the dissenting Justice reached the Conclusion that the offense under investigation fell within the exception to the general rule last referred to. But the other four Justices constituting the court repudiated the doctrine, being of the opinion' that the case did not fall within the exception stated, or any other exception to the general rule; and, as a part of the argument in the prevailing opinion in that case, it was said, quoting from Shaffner v. Com., 72 Pa. 60 (13 Am. R. 649) : “It is a general rule that a distinct crime, unconnected with that laid in the indictment, can not be given in evidence against a prisoner.. It is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another. Logically the commission of an independent offense is not proof, in itself, of the commission of another crime. Yet it can not be said to be without influence on the mind; for certainly, if one be shown to be guilty of another crime equally heinous, it will prompt a more ready belief that he might have committed the one with which he is charged; it therefore predisposes the mind of the juror to believe the prisoner guilty.”
In the case at bar the other Justices say, in the prevailing opinion, that the evidence of Conley as to the prior acts of lasciviousness on the part of the defendant with other women was properly admitted in evidence, because they tended to “show a common scheme or plan of related offenses.” We take issue with them on this proposition. In reference to the theory of admitting evidence of other offenses as showing a design or plan or system on the part of the defendant to commit the crime for which he is on trial, Professor Wigmoré says: “The object here is not simply to negative an innocent intent at the time of the act charged, but to prove a pre-existing design, system, plan, or scheme, directed forwards to the doing of the act. In the former case (of intent) the attempt *305 is simply to negative the innocent state of mind at the time of the act charged; in the present case [design or system] the effect is to establish a definite prior design or system which included the doing •of the act charged as a part of its consummation. In the former ease [intent] the result is to give a complexion to the conceded act, and ends with that; in the present ease [plan or system] the result is to show (by probability) a positive design which in its turn is to evidence (by probability) the doing of the act designed. The added element, then, must be, not merely a smilarity in the results, but such a concurrence of common features that the various acts are naturally to he explained as caused hy a general plan of which they are the individual manifestations.” 1 Wigmore, Bv. § 304. In a subsequent section (357) of the same volume, under the head of “Bape, Abortion, and other Sexual Offenses,” the author says: “The design or plan principle (ante, § 304) requires that the former act or acts should indicate, by common features, a plan or design which tends to show that it was carried out by doing the act charged.” One of the eases cited by this author is that of People v. Stout, 4 Park. Cr. 127, wherein Smith, J., said: “When several felonies are connected together as parts of one scheme or plot, like the different acts in a drama, and all tend to a common end, then they may be given in evidence to show the process of motive and design in the final crime.” Another case cited is that of Com. v. Robinson, 146 Mass. 571 (16 N. E. 452), wherein it was said that in cases of “acts or crimes which are shown to have been committed as part of the same common purpose, or in pursuance of it, there is a distinct and significant probative effect resulting from the continuance of the same plan or scheme, and from the doing of other acts in pursuance thereof. It is somewhat of the nature of threats or declarations of intention, but more especially of preparations for the commission of the crime which is the subject of the indictment. If, for example, it could be shown that a defendant had formed a settled purpose to obtain certain property which could only be got by doing several preliminary things, the last of which in the order of time was criminal, the government might show, on his trial for the commission of that last criminal act, that he had formed the purpose to accomplish the result of obtaining the property, and. that he had done all of the preliminary things which were necessary to that end.” On the subject of col *306 lateral offenses relevant to show system, it is said, in 1 Wharton’s Cr. Ev. § 39, that “to be admissible and relevant under system,'the collateral, extraneous, or independent offense must bé one that forms a link in the chain of circumstances and is directly connected with the charge on trial.” On this subject, in People v. Molineux, supra, Werner, J., said: “It'sometimes happens that two or more crimes are committed by the same person in pursuance of a single design, or under circumstances which render it impossible to prove one without proving all To bring a case within this exception to the general rule, which excludes proof of extraneous crimes, there must be evidence of system between the offense on trial and the one sought to be introduced. They must be connected as parts of a general and composite plan or scheme, or they must be so related to each other as to show a common motive or intent running through both.” He then cites Underhill on Criminal Ev. § 88. Judge Werner cites and discusses many cases under this head, and in support of the doctrine he announces. So,.in Grilleit on Indirect and Collateral Evidence, § 57, a large number of cases are cited in support of the statement that “A series of mutually dependent crimes may be shown where they tend to prove that they were committed -under a system which is relevant to the inquiry.” We might cite all of the works on evidence to the same effect, but deem it unnecessary.
y' It is perfectly clear- to us that evidence of the prior acts of lasciviousness committed by the defendant with other women at or near the place where the deceased was assaulted and killed, considered in connection with the circumstances set forth in the opinion of the majority of the court, did not tend to prove a preexisting design, system, plan, or scheme, directed forward to the making of an assault upon the deceased or killing her to prevent its disclosure. They did not show or tend to establish, in our opinion, any prior design or system on the part of the defendant which included the doing of the act charged in the indictment against him as a part of its consummation. They were wholly independent acts, having, as we think, absolutely no connection with the offense charged in the indictment; and the admission of the evidence in relation to them was certainly calculated to prejudice the defendant in the minds of the jurors and thereby deprive him of a fair trial. ,•
*307 For reasons which we have assigned in showing that the evidence of Conley with which we have specifically ■ dealt was inadmissible, we think that other evidence in the record which was objected to, tending to show independent acts of lasciviousness on the part of Frank or improper conduct of his with other parties at other times, was inadmissible. And all that we have said in demonstrating the inadmissibility of the testimony of the witness Conley as to different and independent acts of lasciviousness is equally applicable to the testimony of the witness C. B. Dalton, set out in the 21st and' 22d grounds of the motion for a new trial. Certain ,other grounds assign error upon rulings admitting testimony over objections. ■ Some of these grounds were not urged in the brief of. counsel for the plaintiff in error; others show the admission of evidence clearly irrelevant, but not, independently of the evidence which we have endeavored in the foregoing opinion to prove inadmissible, of sufficient materiality to amount to cause for granting a new trial.